UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**PETER SIEVERT,**

    **Plaintiff,**

v.                                                           Civil Action No. 13-cv-836

**SAWYER COUNTY,**
**GREG PETERSON,**
**MICHELLE JEPSON,**
**HAROLD V. HELWIG,**
**JAMES BASSETT,**
**WARREN JOHNSON,**
**RON KINSLEY, and**
**FREDERICK ZIETLOW,**

    **Defendants.**

---

### COMPLAINT

---

Plaintiff Peter Sievert, by and through Attorney Glenn M. Stoddard and STODDARD LAW OFFICE, as and for his Complaint against the above-named defendants, alleges as follows:

### NATURE OF ACTION

1. This is an action under the petition clause of the First Amendment of the United States Constitution, and 42 U.S.C. §§ 1983 & 1988, to correct unlawful public employment retaliation practices and to provide appropriate relief to Plaintiff Peter Sievert, who has and is being adversely affected by such practices. Plaintiff alleges that defendants violated his constitutional First Amendment rights by retaliating against him

for filing and pursuing grievances concerning false allegations made against him relative to his actions as Assistant County Forest Administrator on matters of public concern.

## JURISDICTION AND VENUE

2. This action arises under the First Amendment of the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.

3. The Court has Federal Question jurisdiction over this case under 28 U.S.C. §§ 1331 & 1341.

4. Venue rests with this Court because all parties reside in the Western District of Wisconsin, and because plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Peter Sievert ("Plaintiff" or "Sievert") is an adult resident of the state of Wisconsin who at all times relevant has been employed as Assistant County Forest Administrator of Sawyer County, Wisconsin. Sievert resides at 11503 N Rykman Road, Hayward, WI 54843.

6. Defendant Sawyer County ("the County") is a county government which was created pursuant to the laws of the State of Wisconsin. The County's address is: Sawyer County, c/o Kris Mayberry, County Clerk, Sawyer County Courthouse, 10610 Main Street, Suite 10, Hayward, WI 54843.

7. Defendant Greg Peterson ("Peterson") is an adult resident of the State of Wisconsin who at all times relevant has held the position of Sawyer County Forest Administrator. His office address is: Sawyer County Courthouse, 10610 Main Street,

2

Suite 10, Hayward, WI 54843. He is being sued in his official and individual capacities in this action.

8. Defendant Michelle Jepson ("Jepson") is an adult resident of Wisconsin who at all times relevant has held the position of Sawyer County Human Resources Director. Her office address is: Michelle Jepson, Human Resources Director, 10610 Main Street, Suite 23, Hayward, WI 54843. She is being sued in her official and individual capacities in this action.

9. Defendant Harold V. Helwig ("Helwig") is an adult resident of Wisconsin who at all times relevant has held the position of Sawyer County Board Chair and Chair of the Sawyer County Personnel/Administrative Committee ("Personnel Committee"). Helwig's address is: Harold V. Helwig, P.O. Box 39, Stone Lake, WI 54876. He is being sued in his official and individual capacities in this action.

10. Defendant James Bassett ("Bassett") is an adult resident of Wisconsin who at all times relevant has held the position of Sawyer County Board Supervisor and member of the Sawyer County Personnel Committee. Bassett's address is 12353W Chafer Road, Couderay, WI 54828.

11. Defendant Warren Johnson ("Johnson") is an adult resident of Wisconsin who at all times relevant has held the position of Sawyer County Board Supervisor and member of the Sawyer County Personnel Committee. Johnson's address is 4357N Price Dam Road, Winter, WI 54896.

12. Defendant Ron Kinsley ("Kinsley") is an adult resident of Wisconsin who at all times relevant has held the position of Sawyer County Board Supervisor and

3

member of the Sawyer County Personnel Committee. Kinsley's address is 9760W Hwy 27/70, Ojibwa, WI 54862.

13. Defendant Frederic Zietlow ("Zietlow") is an adult resident of Wisconsin who at all times relevant has held the position of Sawyer County Board Supervisor and member of the Sawyer County Personnel Committee. Zietlow's address is P.O. Box 13324, Hayward, WI 54862.

## FACTS

14. Sievert is currently 58 years old and has worked for the County in its Forestry Department for over 25 years. Sievert's entire professional life has been dedicated to the service of the County and its citizens. He has been a hard-working County employee who has done a fine job for the citizens of the County.

15. Sievert first worked for the County as a forester and starting in 1996 he became the Assistant County Forest Administrator.

16. The County owns a large amount of County Forest land which is administered and managed for commercial timber production, recreation, wildlife habitat, and watershed protection by the County Forestry Department. Commercial timber production from the County Forest through the administration of timber sales provides substantial revenue to the County each year, and the administration and management of the County Forest land by the County Forestry Department is a matter of public concern to the County and its residents, property owners and taxpayers, recreational users, visitors, and forestry-related commercial enterprises.

17. In 2006, the previous County Forest Administrator was forced to retire and Peterson was hired by the County as the new Sawyer County Forest Administrator.

18. Prior to Peterson's hiring, Sievert expressed concerns about certain administrative practices and policies within the County Forestry Department but he was told to keep quiet. He was also informed by a County Forestry Committee ("Forestry Committee") member that he could not apply for the County Forest Administrator's position, but this was quickly corrected by Carol Larson, who was then the County's Human Resources Director. As a result, Sievert was allowed to apply for the County Forest Administrator position, although he was not hired.

19. Following Peterson's hiring as the new County Forest Administrator in 2006, the County Forestry Department was reorganized and Sievert was re-appointed to his current position as Assistant County Forest Administrator. Since then, Sievert has tried to work cooperatively and constructively with Peterson. However, Peterson has been unwilling to discuss forestry issues Sievert in a cooperative and constructive manner, and Peterson has engaged in verbal abuse, threatening gestures, and made false and misleading accusations against Sievert concerning Sievert's work on County Forest timber sales and other forestry work.

20. On October 13, 2009, Sievert filed a grievance to contest false allegations by Peterson concerning Sievert's administration of a timber sale on County Forest land. Among other issues, the false allegations included an allegation that Sievert had engaged in and allowed timber theft, trespassing, and criminal damage to private property in conjunction with his oversight and administration of a timber sale on County Forest land.

21. Before Sievert's October 13, 2009 grievance was resolved, Peterson privately told Sievert that he was "taking this to the mat and either you (Sievert) or me (Peterson) will be gone" or words to that effect.

22. On October 15, 2009, three days after Sievert filed his first grievance, the first of many investigatory meetings was called by Peterson to investigate Sievert's work performance in the administration of County Forest timber sales for which Sievert was responsible. This was the beginning of an ongoing pattern of harassment by Peterson against Sievert, which was followed by many such meetings.

23. On November 13, 2009, Sievert won his October 13, 2009 grievance against Peterson, and Peterson was directed to behave towards Sievert in a more professional manner.

24. Nonetheless, as a result of the first series of investigatory meetings initiated by Peterson on October 15, 2009 (which consisted of Sievert, Peterson, a union representative, and the County's then-Human Resources Director, Carol Larson), Sievert was issued a written warning by Peterson.

25. The investigatory meetings were initially focused on various minor allegations regarding forestry practices on timber sales administered by Sievert. The issues regarding Sievert's administration of timber sales that were used as a basis for the investigatory meetings by Peterson were minor in comparison to the issues that came up on timber sales that were administered by other foresters in the County's Forestry Department, but only Sievert was targeted for investigation and discipline by Peterson.

26. Based on the warning he was given and the investigatory meetings initiated by Peterson following Sievert's first grievance, Sievert filed a second grievance against Peterson in early 2010. This grievance progressed through all grievance steps and was scheduled to go to arbitration on May 20, 2010.

27. In the meantime, more investigatory meetings relative to Sievert's forestry work were scheduled by Peterson. On February 24, 2010, Sievert was given a one day suspension for improper administration of Timber Sale No. 2592. He thus filed a third grievance to challenge this suspension (Grievance No. 9107), because Peterson had again made false allegations against Sievert, and Sievert had proof Peterson had lied about Sievert's forestry work.

28. On May 20, 2010 (which was the day set for the arbitration hearing on Sievert's second grievance (Grievance No. 9107)), the County wanted to settle Sievert's second and third grievances. The arbitrator explained the issues and the parties reached a settlement. At that point, Sievert wanted to do his job without further harassment and retaliation by Peterson. The parties agreed that a meeting between Sievert and Peterson would be held to discuss issues of forest administration within the County Forestry Department as a whole. Peterson's harassment and retaliation against Sievert had taken a physical and emotional toll on Sievert and he wanted it to end so he could do his job without further harassment and retaliation by Peterson. A letter of agreement was signed regarding this settlement.

29. On July 7, 2010, however, Sievert was given another letter of disciplinary action by Peterson, along with a five-day suspension without pay. The letter addressed two incidents: One incident was based on the original false allegations made against Sievert relative to Grievance No. 9107, with respect to the Kline timber sale, which Sievert had administered for the County. The second incident concerned oral exchanges between Sievert and a co-worker, Forester David Todus ("Todus").

30. Sievert subsequently filed a fourth grievance against Peterson to challenge the July 7, 2010 disciplinary action letter and five-day suspension without pay he had received from Peterson. This grievance was heard by the Personnel Committee and Sievert prevailed. Consequently, all documentation regarding the July 7, 2010 disciplinary action letter and five-day suspension was to be removed from Sievert's personnel file and he was to be paid for the five-day suspension without pay. The evidence presented at the grievance hearing showed that Peterson and Todus had lied about Sievert and enlisted another County employee to say he heard one of the oral exchanges between Sievert and Todus, although he had supposedly forgotten to tell anyone until the day of the grievance hearing. This was too much for the County's Personnel Committee to believe, and it considered taking action against Peterson for making false accusations against Sievert and lying about the Kline timber sale. However, no such action was taken by the Personnel Committee and Peterson was not disciplined for the actions he had taken against Sievert.

31. During November 2010, Sievert filed a fifth grievance based on oral abuse and harassment against him by Peterson, which Peterson subsequently admitted.

32. On May 1, 2012, the County's Wisconsin Department of Natural Resources ("DNR") liaison forester, Rachel Peterson, contacted Sievert and asked him to establish a property boundary line for a timber sale the DNR was planning to carry out on land adjacent to County owned land. Upon overhearing that DNR had made this request and that Sievert was attempting to assist the DNR liaison forester with the help of another County Forestry Department employee named Jeff Steidl ("Steidl"), Peterson became very upset with Sievert. Then, in a loud, hostile and threatening voice, Peterson

8

questioned why Sievert and Steidl were going to assist the DNR liaison forester with her request. Sievert responded that doing so was part of his job description with the County. However, Peterson continued to harass Sievert over this issue in an oral exchange that was made in the presence of two other people, including Steidl, and Peterson's Forestry Department secretary. Consequently, Sievert filed a fifth grievance over the harassment he had received from Peterson on this issue on May 3, 2012.

33. After Sievert filed his fifth grievance on May 3, 2012, the grievance was investigated by Jepson and denied. Jepson falsely claimed she had done a thorough investigation of this grievance, although she only interviewed Peterson and his Forestry Department secretary. She did not interview Sievert or Steidl. Sievert did not appeal Jepson's decision on his fifth grievance because of miscommunication from Jepson to Sievert's union representative concerning the deadline for appeal.

34. The week after his fifth grievance of May 3, 2012 was denied by Jepson, Sievert was called into Peterson's office and placed under a new performance plan by Peterson, although the County had done nothing with the performance plan that Sievert was currently under at that time.

35. Meetings were then scheduled by Peterson to discuss Sievert's new performance plan. The plan essentially established goals for Sievert to set up more timber sales on County Forest land. During the initial meetings, Sievert explained to Peterson that he was working with the DNR liaison forester on timber sales and was helping other foresters set up timber sales in addition to administering all the DNR sales. Sievert also explained the difference between marking a hardwood stand for selective thinning and marking an aspen stand for clear cutting. Sievert specifically pointed out that marking a

9

hardwood stand for selective thinning is much more difficult and time consuming than marking an aspen stand for clear cutting. Sievert further explained that the volume of wood cut per acre is generally much lower in a selective thinning than in a clear cutting of the same acreage. Despite these explanations by Sievert, Peterson directed Sievert not to do anything to help or work with anyone else, and that he should just set up a specified amount of timber for sale each year, regardless of the type of stand being harvested or the types of forestry and logging methods being used. Peterson also directed Sievert not to work with the DNR liaison forester, although doing so was part of Sievert's job description.

36. At one of the meetings called by Peterson, Peterson made false allegations about timber sales that had been administered by Sievert before the settlement of Sievert's second and third grievances on May 20, 2010.

37. Sievert subsequently asked to see his personnel file and nothing was in it other than the current performance plan. Sievert then showed Jepson the grievance settlement agreement signed on May 20, 2010, and she immediately apologized and told Sievert that Peterson's accusations going back to the time before May 20, 2010 would not be used as a disciplinary issue against Sievert.

38. During mid 2012, after Sievert had been led to believe he had successfully completed his performance plan, discussions about revising his position description as Assistant Forest Administrator began between Peterson, Sievert, and Jepson. At one point Jepson stated that Sievert's position was not needed but she later denied making this statement. However, Sievert was asked if he would accept a demotion to the position of Forest Technician, with a pay reduction of over $6.00 per hour. Sievert responded by

stating that he liked all aspects of his present job, that he did <u>not</u> agree to accept a demotion, and that he wanted to remain in the position of Assistant Forest Administrator without a pay reduction.

39. On January 22, 2013, Sievert was asked to meet with Peterson and Jepson. About five minutes prior to this meeting Sievert was presented with a newly revised job description by Jepson. During the meeting Jepson repeatedly stated that Sievert had to accept and sign the new job description that day or at least sign it and return it by Monday, January 28, 2013. Sievert chose not to sign the new job description at the meeting because he wanted to consider it carefully.

40. On January 26, 2012, two days before the date by which he was required to return a signed copy of the new job description, Sievert sent an email to Jepson which stated that Sievert had a number of "questions and concerns" about the new job description and that he had been advised by an attorney "not to sign the new job description at this time." In addition, Sievert's email stated that if he accepted the newly revised job description, "it will be necessary to make other organizational changes in the department."

41. On January 29, 2012, Sievert received a letter of reply from Jepson, indicating that if he did not accept and sign the new job description he would be subject to demotion from his position as Assistant County Forest Administrator by Peterson and the County.

42. On February 12, 2012, the Forestry Committee met in closed session to discuss Sievert's position in the County's Forestry Department. Sievert was not allowed to address the Forestry Committee at this meeting, and Sievert had previously been told

11

by Jepson that if he spoke to the Forestry Committee or any of its members at any time about his work it would be considered insubordination and grounds for his dismissal from employment with the County. Later that day Sievert received an email from Jepson indicating that the Forestry Committee had met and had discussed this issue and had decided to communicate with Attorney Mindy Dale, the County's labor attorney, and that more information would be forthcoming regarding Sievert's employment status.

43. On February 25, 2013, Sievert received a memorandum from the Forestry Committee, Peterson, and Jepson, notifying him that the Forestry Committee had scheduled a meeting on March 12, 2013, at 9:30 a.m., to "take evidence and determine whether you (Sievert) should be demoted from the position of assistant County Forest Administrator to a Forester I, with a corresponding reduction in your (Sievert's) hourly wage rate." The basis for this potential action by the Forestry Committee was that Sievert had not yet accepted and signed the proposed new job description.

44. On March 12, 2013, Sievert appeared before the Forestry Committee with his attorney, Glenn M. Stoddard. At this meeting Attorney Stoddard objected to past and ongoing harassment and retaliation against Sievert by Peterson, Jepson, and the County, based on the grievances Sievert had filed against Peterson, and for wishing to speak to the Forestry Committee about Sievert's concerns with the proposed new job description, including the need to "make other organizational changes in the department," if he would accept the proposed new job description.

45. After hearing from Attorney Stoddard and Sievert at the March 12, 2013 Forestry Committee meeting, the Forestry Committee went into a closed session with

12

Jepson. During its closed session the Forestry Committee decided to retain Attorney Mindy Dale to advise the County on how to proceed with Sievert.

46. On March 26, 2013, Attorney Dale sent a letter to Attorney Stoddard regarding Sievert's position and the issues raised at the March 12, 2013 Forestry Committee meeting by Attorney Stoddard and Sievert. After receiving this letter, Attorney Stoddard, Sievert, and Attorney Dale all agreed to meet on July 19, 2013, to discuss these matters and explore ways to resolve them.

47. On June 6, 2013, however, Sievert was informed via a memorandum from Peterson that his job duties were being changed and he would have no further forestry-related responsibilities. Sievert was also informed via this memorandum that a County Forest timber sale he had been handling was under investigation by Peterson.

48. On July 19, 2013, Sievert, Attorney Stoddard, and Attorney Dale met to discuss these issues but no resolution was reached at this meeting.

49. Subsequent to the meeting of July 19, 2013, Sievert and Attorney Stoddard were informed by Attorney Dale that Sievert was again being investigated by Peterson and Jepson for matters relating to Sievert's administration of County Forest timber sales, and that Sievert would be given diminished job responsibilities until the investigation was completed. No other details were provided.

50. On August 24, 2013, Sievert was falsely accused by Peterson of sleeping in his truck during working hours on July 23, 2013, and he was given an oral disciplinary warning by Peterson. Peterson gave Sievert this disciplinary warning based on a false report by Todus, that Todus had witnessed Sievert sleeping in his truck near a County Forest timber sale which was the nearest access to a state-owned wildlife property where

13

Sievert was working that day. Peterson subsequently refused to discuss the incident with Sievert or even listen to Sievert's version of what had actually happened on July 23, 2013, when Todus claimed to have found him sleeping in his truck.

51. On September 3, 2013, Sievert filed a sixth grievance to contest the oral warning he received from Peterson on August 24, 2013, for allegedly sleeping in his truck on July 23, 2013. Sievert attached a written explanation of what actually happened on July 23, 2013 to his grievance, and he explained that he was not sleeping in his truck but was, instead, taking a short afternoon break and listening to the radio after working non-stop in the field for over six hours, as allowed under the County's personnel policies. In addition, Sievert stated in his explanation that the false allegations had been made by Todus, "who in the past has made false statements about [Sievert] which the County has found to be untrue."

52. On September 10, 2013, Peterson and Jepson issued a formal response to Sievert's sixth grievance of September 3, 2013. In their response, they stated: "To resolve this grievance, the oral warning is being withdrawn and replaced with a letter of expectations. In making this change, there is no admission that any harassment occurred or that the information contained in the written documentation received from the grievant is true or correct. A letter of expectations is attached."

53. On September 20, 2013, Sievert filed a seventh grievance over the "letter of expectations" he was given by Peterson and Jepson, in response to his September 3, 2013 grievance. In his seventh grievance, Sievert set forth the following explanation of what had happened: "Employee received an oral warning from supervisor for sleeping on the job. Employee filed grievance relative to oral warning. Oral warning was

14

withdrawn by management and replaced with a written warning (letter of expectations) on 9/10/13. Issues addressed in the oral warning were not resolved. Additional allegations were added to written warning from an incident which occurred over one year ago, (8/10/2012) which at that time management agreed were unfounded. Allegations were that employee was sleeping in truck and were determined to be unfounded."

54. On or about September 30, 2013, Peterson and Jepson denied Sievert's September 20, 2013 grievance (Grievance #1-2013) regarding the "letter of expectations," asserting that it was "not a disciplinary document" and that the other matters addressed in the grievance were not "subject to the contractual grievance procedure"

55. On October 6, 2013, Sievert appealed the denial of his September 20, 2013 grievance (Grievance No. 1-2013) to the Personnel Committee, pursuant to step three of the County's grievance procedure.

56. On October 28, 2013, Sievert was given a letter from Peterson and Dale Olson ("Olson"), the County's Zoning Administrator. This letter informed Sievert that he was being temporarily reassigned and would thereafter "be reporting to Zoning Administrator Dale Olson instead of Forestry Administrator Greg Peterson." In addition, this letter substantially changed Sievert's job description and duties on an indefinite basis and indefinitely removed him from doing any forestry work.

57. On November 14, 2013, Sievert and Attorney Stoddard met with the Personnel Committee to discuss the appeal of Sievert's September 20, 2013 grievance (Grievance No. 1-2013). At this meeting, copies of the October 28, 2013 letter described in the preceding paragraph were presented to, and discussed with, the Personnel

Committee, along with the grievance appeal. At the end of the meeting, the Personnel Committee went into closed session with Attorney Dale who later reported to Sievert and Stoddard that the Personnel Committee had voted to deny Sievert's grievance appeal. The Personnel Committee took no other action and did not address the October 28, 2013 letter to Sievert from Peterson and Olson.

58. The members of the Personnel Committee who were present at the November 14, 2013 meeting described above, and who reportedly voted to deny Sievert's grievance (Grievance No. 1-2013), were Defendants Helwig, Bassett, Johnson, Kinsley, and Zietlow.

59. Since Sievert filed his first grievance against Peterson on October 13, 2009, he has been intentionally subjected to adverse employment actions, including an ongoing hostile and intimidating work environment, harassment, and retaliation by Peterson and the County because he filed the grievances described above to contest false allegations against him by Peterson, concerning his work on matters of public concern as the County's Assistant Forest Administrator.

60. Since May 3, 2012, Jepson has worked hand-in-hand with Peterson, the County, and the Personnel Committee, to intentionally subject Sievert to adverse employment actions, including an ongoing hostile and intimidating work environment, harassment, and retaliation because he filed the grievances described above to contest false allegations against him by Peterson, concerning his work on matters of public concern as the County's Assistant Forest Administrator.

61. On November 14, 2013, the members of the Personnel Committee who were present and who voted to deny Sievert's grievance (Grievance No. 1-2013)

(Defendants Helwig, Bassett, Johnson, Kinsley, and Zietlow) and ignore Sievert's concerns about the October 28, 2013 letter to Sievert from Peterson and Olson, voted as they did in retaliation against Sievert because he filed the grievances described above to contest false allegations against him by Peterson, concerning his work on matters of public concern as the County's Assistant Forest Administrator.

62. Since Sievert filed his first grievance against Peterson on October 13, 2009, Sievert has lost income and other benefits, incurred substantial attorney fees and costs, and suffered inconvenience, loss of reputation, emotional distress, pain, suffering, and mental anguish.

## CLAIM FOR RELIEF

## (FIRST AMENDMENT RETALIATION)

63. Sievert realleges and incorporates herein by reference each of the preceding paragraphs and each of the supporting documents referenced herein, as if set forth in full.

64. Sievert has fulfilled all conditions precedent to the institution of this lawsuit.

65. The grievances filed by Sievert, as described above, involve matters of public concern and importance because the public has an interest in the efficient administration of the County's public forests, which provide substantial public benefits and revenue to the County through timber sales and other sources of revenue. In addition, the grievances filed by Sievert involve matters of public concern because the public has an interest in knowing whether the County and the individual defendants treat Sawyer County Forestry Department employees fairly.

66. The official actions of all defendants in response to Sievert's grievances in this matter constitute unlawful employment retaliation practices in violation of Sievert's constitutional First Amendment right to petition the government by filing and pursuing grievances on matters of public concern and importance, for which all defendants are liable in their official capacities.

67. The individual or personal actions of Defendants Peterson, Jepson, Helwig, Bassett, Johnson, Kinsley, and Zietlow, in response to Sievert's grievances, as described above, constitute unlawful employment retaliation practices which were intentional and were taken with malice or reckless indifference to Sievert's clearly established constitutional rights under the First Amendment of the U.S. Constitution and, thus, these individual defendants are liable to Sievert in their individual or personal capacities.

**REQUESTED RELIEF**

**WHEREFORE**, Plaintiff Peter Sievert respectfully requests that this Court:

A. Order defendants to institute and carry out policies, practices, and programs to reinstate all of Sievert's former duties and responsibilities and provide constitutional protections for Sievert, to eradicate the effects of defendants' past and present unlawful employment retaliation practices against him;

B. Order all defendants to make Sievert whole and to pay him compensatory damages, including but not limited to compensation for lost income and other benefits, attorney fees and costs, inconvenience, loss of reputation, emotional distress, pain, suffering, and mental anguish, in amounts to be determined at trial;

C. Order Defendants Peterson, Jepson, Helwig, Bassett, Johnson, Kinsley, and Zieilow, as defendants sued in their individual or personal capacities as well as in their official capacities, to pay Sievert compensatory and punitive damages for their actions which were intentional or taken with malice or reckless indifference to Sievert's federally protected constitutional rights under the First Amendment of the U.S. Constitution.

D. Order defendants to pay Sievert and his attorneys their reasonable attorney fees, costs, and expenses in this action, in accordance with 42 U.S.C. § 1988; and

E. Order such other and further relief as the Court deems appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiff Peter Sievert requests a jury trial on all questions of fact raised by this complaint.

Dated this 4th day of December, 2013.

STODDARD LAW OFFICE

By: */s/ Glenn M. Stoddard*
Glenn M. Stoddard
Attorney for Plaintiff
WI State Bar No. 1020964
316 N. Barstow Street, Suite B
P.O. Box 227
Eau Claire, WI 54702
Office Tel: (715) 852-0345
Cell/direct: (715) 864-3057
Email: glennstoddard@gmail.com